UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NOELLE M. DUBRAY,<br><br>Defendant. | 3:07-CR-30030-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Noelle M. DuBray, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 39. Plaintiff, the United States of America, opposes the motion. Docket 44. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

DuBray pleaded guilty to second degree murder in violation of 18 U.S.C. §§ 1153 and 1111. Dockets 20, 23. On November 2, 2007, this court sentenced DuBray to 210 months in custody and 5 years of supervised release. Docket 31; Docket 34 at 2-3. DuBray is eligible for home confinement on November 3, 2021, and her current anticipated release date is May 3, 2022. Docket 41 at 827.

DuBray is incarcerated at Federal Correctional Institution (FCI) Waseca, a low-security correctional institution in Waseca, Minnesota. *Id.* at 50, 827; Docket 43 at 1. As of September 22, 2020, there are currently 113 active COVID-19 cases among FCI Waseca's inmates, 2 active COVID-19 cases among

the facility's staff, 64 inmates and 6 staff have recovered from COVID-19, and there are zero deaths from COVID-19. *See BOP: COVID-19 Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 22, 2020).

DuBray is 40 years old. Docket 41 at 5. DuBray's health conditions include obesity, iron deficiency anemia, chondromalacia of patella, and low back pain. *Id.* at 44. DuBray takes iron supplements to treat her iron deficiency anemia. *Id.* at 13-14, 33. In May of 2020, DuBray weighed 218 pounds, and she is between 68 and 70 inches tall. *Id.* at 14, 242, 487, 555. Based on her height and weight, her body mass index (BMI) is between 31.3 and 33.1. *Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi _calculator.html (last visited on Sept. 11, 2020); *see also* Docket 41 at 14.

On July 20, 2020, DuBray submitted a request for compassionate release to the warden, requesting that she be considered for early release because of her health and COVID-19. *See* Docket 41 at 831-33. DuBray filed a pro se motion with the court for relief under the First Step Act. Docket 39. DuBray's counsel subsequently filed a supplement to her pro se motion. Docket 43.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

DuBray argues that the "unprecedented and extraordinary risk posed by the global COVID-19 pandemic," together with her health conditions, satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 43 at 1. DuBray requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

I.   **Administrative Exhaustion**

Previously, only the Bureau of Prisons (BOP) Director possessed the

authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

DuBray submitted her request for compassionate release on July 20, 2020. The 30-day period expired on August 19, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, DuBray's motion is ripe for review on the merits.

## II.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id*. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is

a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs

5

coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, DuBray has failed to show that her health conditions rise to extraordinary and compelling circumstances.

DuBray contends that her circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 43 at 3-12. DuBray argues that her health conditions put her at high-risk of serious complications if she contracts COVID-19. *Id.* at 8.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes.

6

*People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (Aug. 14, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

The court has reviewed the medical records submitted in this case. DuBray's health conditions include obesity, iron deficiency anemia, chondromalacia of patella, and low back pain. Docket 41 at 44.

With a BMI between 31.3 and 33.1, DuBray is obese, and therefore, she presents the additional risk factor of obesity. The United States appears to concede that obesity is an "extraordinary and compelling reason" for a sentence reduction. Docket 44 at 6. To the extent the United States suggests that obesity standing alone qualifies as a compelling and extraordinary reason warranting release, the court disagrees. "[T]he fact that [DuBray] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [her] sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons);

7

*United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons). DuBray has not identified how her obesity prevents her from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances.

DuBray's other medical conditions—iron deficiency anemia, chondromalacia of patella, and low back pain—are not listed as medical conditions that might increase or increase the risk of severe illness from COVID-19.

While DuBray's obesity may put her at a higher risk of severe illness if she contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest she has not been able to manage her other medical conditions while in the prison environment. DuBray is receiving medical attention and treatment for these conditions, which all appear to be controlled or monitored. *See, e.g.*, Docket 41 at 13-14, 23, 403, 730-31, 744, 763, 765 (detailing sick calls, follow-up visits, and chronic care visits and listing medication for health conditions). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal

quotation omitted). Thus, the court finds that DuBray does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

COVID-19 has infiltrated FCI Waseca, but it has not had catastrophic effects. At the present time, there are 115 active COVID-19 cases among the inmates and staff at FCI Waseca. *See United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("[T]he mere presence of COVID-19 in a particular prison . . . cannot justify compassionate release—if it could, every inmate in that prison could obtain release."). Although DuBray is unable to practice preventative measures as effectively in custody as she would in home confinement, FCI Waseca encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 11, 2020). Dubray can do all those recommendations to some extent.

The court believes that DuBray's health conditions are appropriately managed at FCI Waseca, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates DuBray's health conditions, such ailments, coupled with the present conditions at FCI Waseca, do not establish extraordinary and compelling reasons justifying her early release.

Even assuming DuBray's medical conditions are "extraordinary and

9

compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. When G.D., DuBray's son, was one month and two days old, DuBray shook him forcefully, slapped him five or six times, and hit the side of his head with her palm. PSR ¶¶ 8, 13, 16-17. She stopped hitting him once G.D. started gasping for air. *Id.* ¶ 16. G.D. died of blunt trauma to the head. *Id.* ¶¶ 11, 17. G.D.'s autopsy showed that he had an acute subdural hemorrhage and bilateral cerebral hemispheres in the brain, along with a contusion tear to the left parietal portions of the brain and multiple areas of contusion to the external body surface. *Id.* ¶ 11. DuBray's total offense level was a 39. *Id.* ¶ 33. Her guideline range was 262 to 327 months in custody. *Id.* ¶ 64. When sentencing DuBray, the court factored in DuBray's lack of criminal history and sentenced her well below her guideline range to 210 months. *See id.* ¶¶ 35-36; Docket 34. DuBray has served approximately 88% of her full term and approximately 76% of her statutory term. Docket 41 at 828. And she appears, to her credit, to have worked on improving herself in custody. Docket 42 at 98, 101-02; Docket 39. But the original sentence was chosen with care, considering DuBray's and her community's needs and all of the other applicable sentencing factors. Therefore, the court finds that DuBray's sentence of 210 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

DuBray has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 39) is denied.

Dated September 22, 2020.

> BY THE COURT:
>
> */s/ Karen E. Schreier*
> KAREN E. SCHREIER
> UNITED STATES DISTRICT JUDGE